## IN RE JULIANNA B.*
### (AC 34934)

Robinson, Alvord and Harper, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued January 10—officially released February 20, 2013**

*James P. Sexton,* assigned counsel, for the appellant (respondent father).

*Michael J. LaMonica,* assistant attorney general, with whom, on the brief, were *George Jepsen,* attorney general, and *Susan T. Pearlman* and *Benjamin Zivyon,* assistant attorneys general, for the appellee (petitioner).

*Ingrid E. Swanson,* for the minor child.

*Opinion*

ALVORD, J. The respondent father, Julius B., appeals from the judgment of the trial court terminating his parental rights, pursuant to General Statutes § 17a-112

---

** February 20, 2013, the date this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

(j),[1] with respect to his minor child.[2] On appeal, the respondent claims that the termination of his parental rights violated his substantive due process rights, which are guaranteed in the fourteenth amendment to the United States constitution and article first, §§ 8 and 10, of the constitution of Connecticut. He contends that depriving him of his fundamental liberty interest in the care, custody and control over his child required the court to find a compelling state interest and undertake a least restrictive means analysis in determining a proper permanency plan for the child.[3] We determine that the record to support the respondent's claim is inadequate for review and, accordingly, affirm the judgment of the trial court.

---

[1] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child . . . (2) termination is in the best interest of the child, and (3) . . . (B) the child . . . (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[2] The respondent's child has a half-sister; the children share a mother. The petitioner, the commissioner of children and families, concurrently filed petitions to terminate the parental rights of the father of the child's sister on the grounds of abandonment and no ongoing parent-child relationship, and the children's mother on the grounds of abandonment and failure to achieve personal rehabilitation. The court granted the petition to terminate the parental rights of both the children's mother and the father of the child's sister. Neither is party to this appeal.

[3] The respondent argues that this claim should be reviewed under strict scrutiny, which would require the law to "advance a compelling state interest by the least restrictive means available." *Bernal* v. *Fainter*, 467 U.S. 216, 219, 104 S. Ct. 2312, 81 L. Ed. 2d 175 (1984). Our Supreme Court has stated that a "parent's interest in the care, custody and control over his or her children is perhaps one of the oldest of fundamental liberty interests recognized by [the] Court . . . ." (Internal quotation marks omitted.) *Roth* v. *Weston*, 259 Conn. 202, 218, 789 A.2d 431 (2002). It has not yet, however, had occasion to decide whether strict scrutiny review applies to § 17a-112.

The following facts are either undisputed or were found by the court by clear and convincing evidence. On October 6, 2009, at the age of twenty months, the child was taken into the custody of the petitioner, the commissioner of children and families, pursuant to a ninety-six hour hold after her mother's uncle killed her mother's boyfriend in the presence of the child and her sister. On October 8, 2009, the petitioner filed a motion for an order of temporary custody of the children. On October 16, 2009, the children were adjudicated neglected and committed to the custody and care of the petitioner, and the court issued final specific steps to the respondent. On December 26, 2009, the sisters were placed in a department foster home, in which they continue to reside. On October 15, 2010, the petitioner filed a petition to terminate the parental rights of the respondent based on his failure to achieve personal rehabilitation such that he could assume a responsible position in the life of his child. On July 19, 2012, the court granted the petition to terminate the respondent's parental rights after finding that a statutory ground for termination existed and that termination was in the best interest of the child. This appeal followed.

After the child and her sister were taken into the petitioner's custody, the department of children and families (department) referred the respondent to services to help him with issues of substance abuse, domestic violence, mental health and unemployment. Although the respondent completed these programs,[4] achieved a degree of stability in his life[5] and maintained

[4] The court found that the respondent "complied with all the services to which he was referred by [the department], including parenting education at [Southern Connecticut State University Family Clinic]; domestic violence counseling at NOVA; substance abuse counseling at Grant Street Partnership; mental health treatment at the Hill Health Center; and additional domestic violence counseling through the EVOLVE program."

[5] The court noted that the respondent "has stable housing, and has recently secured employment."

a relationship with the child while she was in the petitioner's custody,[6] the court determined that the respondent had "failed to achieve a sufficient degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, [he] could assume a responsible position in the [life] of [the child]."[7]

In its written memorandum of decision granting the petition to terminate the respondent's parental rights, the court noted that in November, 2010, the maternal grandparents of the child and her sister filed a motion to revoke commitment, requesting that the court transfer guardianship of the children to their care and custody. The court denied the motion, concluding that it "clearly" was not in the children's best interest to transfer guardianship to the maternal grandparents. At the subsequent trial to terminate the respondent's parental rights, a social worker from the department testified that the maternal grandparents "were ruled out [as a possibility for placement of the children] because of [the] grandfather's criminal and child protection histories." The same social worker testified that efforts to place the children with other family members were unsuccessful.

On appeal, the respondent claims that his substantive due process rights were violated because the court did not consider whether there was a potential permanency plan for the child that would not terminate his paternal

---

[6] The court noted that the respondent's "contact with his daughter was commendable, as he attended nearly two hundred visits since the child came into [the petitioner's] care in 2009."

[7] The court's concerns were the respondent's "extensive substance abuse history, coupled with his lengthy criminal history, and his frequent incidents of domestic violence involving respondent mother [of the child and her sister]. . . . The evidence is overwhelming that [the respondent] has anger management problems, impulsivity and mood regulation problems, and an apparent propensity for engaging in acts of domestic violence with significant others."

rights, and thus would be a less restrictive means of achieving the state's compelling interest to preserve the safety and welfare of the child. Specifically, he claims that "the petitioner failed to adduce any evidence as to whether the foster mother would have considered a transfer of guardianship or an open adoption." Likewise, he claims that "the petitioner failed to adduce any convincing evidence as to why a transfer of [the child's] legal guardianship to [her paternal aunt] was not a viable placement alternative . . . ." The respondent acknowledges that the record does not contain facts sufficient to determine whether there was a less restrictive means of securing a permanency plan in the best interest of the child. Thus, he argues that we should remand the case for further factual findings by the trial court.

The respondent did not preserve his claim at trial and, therefore, seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances.

"The defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error. If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a

constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim." (Emphasis in original.) Id. "Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the respondent's claims] would be entirely speculative." (Internal quotation marks omitted.) *In re Azareon Y.*, 139 Conn. App. 457, 463, 60 A.3d 457 (2012), cert. granted, 307 Conn. 950, 60 A.3d 739 (2013).[8]

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Internal quotation marks omitted.) *In re Michael L.*, 56 Conn. App. 688, 692, 745 A.2d 847 (2000). "Section 17a-112 (k)[9] prescribes the factual findings a

---

[8] We note that our Supreme Court granted certification for appeal in *In re Azareon Y.* on January 8, 2013. The substantive due process argument advanced by the respondent in *Azareon Y.* is indistinguishable from the argument advanced by the respondent in this case.

[9] General Statutes § 17a-112 (k) provides in relevant part: "[I]n determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent

court must make by clear and convincing evidence in deciding whether the termination of parental rights is in the best interest of the child. In a termination of parental rights proceeding, the statutory criteria must be strictly complied with before termination can be accomplished." (Internal quotation marks omitted.) *In re Azareon Y.*, supra, 139 Conn. App. 462–63.

The court, in its written memorandum of decision, detailed the actions taken by the department and the respondent over the three years that the child had been in the petitioner's custody. In the adjudicatory phase, the court concluded that there was clear and convincing evidence that a statutory ground existed for terminating the respondent's parental rights. In the dispositional phase, the court made findings by clear and convincing evidence as to each of the criteria within §17a-112 (k) and determined that it was in the best in interest of the child to terminate the respondent's parental rights.

In reaching this conclusion, the court noted the testimony of a licensed clinical and forensic psychologist, who opined that separating the sisters would be additionally traumatizing to them because they experienced significant trauma and loss at a young age. The court also noted the prior denial of the motion to revoke commitment that had been filed by the child's maternal grandparents, and the testimony of a social worker from

has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

the department explaining why the maternal grandparents were not an option for custody of the children. The court did not, however, make any specific findings with regard to the two alternatives that the respondent *now suggests on appeal* would have been a less restrictive means of protecting the safety and welfare of the child: a transfer of legal guardianship to a paternal aunt, or the child's foster mother's consideration of either a transfer of guardianship or an open adoption. We therefore conclude that the record is inadequate to review the alleged claim of error and, accordingly, the respondent's unpreserved claim fails to satisfy the first prong of *Golding*. See, e.g., *In re Azareon Y.*, supra, 139 Conn. App. 462–63 (respondent's claim that termination of parental rights violated parent's substantive due process rights fails because of failure to satisfy first prong of *Golding*); see also *In re Brendan C.*, 89 Conn. App. 511, 528–29, 874 A.2d 826 (respondent's claim that termination of parental rights violated parent's substantive due process rights fails because of failure to satisfy third prong of *Golding*), cert. denied, 274 Conn. 917, 879 A.2d 893, cert. denied, 275 Conn. 910, 882 A.2d 669 (2005); *In re Michael L.*, supra, 56 Conn. App. 699 (same).

In anticipation of our conclusion that the record is inadequate for review, the respondent argues that such a determination is an insufficient ground to render judgment, relying on *Santosky* v. *Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). In *Santosky*, the United States Supreme Court held that, as a matter of procedural due process, the federal constitution requires that the state prove the need to terminate the parent-child relationship by clear and convincing evidence. Id., 769–70. *Santosky* altered the burden of proof from a preponderance of the evidence standard to the clear and convincing evidence standard; id.; which is now axiomatic in termination of parental rights cases.

The Supreme Court remanded *Santosky* to the trial court, stating that it could not make a determination about the termination of parental rights because it could not "[accept] as the 'facts of the case' findings that are not part of the record and that have been found only to be more likely true than not." Id., 770 n.19. The respondent argues that we must remand this case for further factual findings by analogizing the change in the burden of proof in *Santosky* with the need to conduct a least restrictive means test that he suggests is a requirement in a proceeding to terminate parental rights. We are not persuaded.

Here, the respondent is arguing that a violation of his substantive due process rights occurred, whereas in *Santosky*, the court was concerned with procedural due process. In *Santosky*, the United States Supreme Court explained that its opinion changed the entire nature of the trial court's factual findings because facts that previously were found by the trial court under a preponderance of the evidence standard would not necessarily have been found by the same trial court examining the same evidence under a more rigorous clear and convincing evidence standard. The significant difference between the present case and *Santosky* is that the claim at issue on appeal was litigated at trial in *Santosky*, whereas the claim in the present case was not litigated at trial. The distinction is clear when comparing the two records; the record in *Santosky* contained facts relating to the claim before the Supreme Court changed the burden of proof, whereas the record here never contained facts that would support the respondent's claim. The Supreme Court remanded *Santosky* "for further proceedings not inconsistent with this opinion." Id., 770. On remand, the trial court simply reviewed the previously presented evidence to determine whether the evidence produced at trial met a clear and convincing standard. See *In re John AA*, 89 App.

Div. 2d 738, 453 N.Y.S.2d 942 (1982), leave to appeal denied, 58 N.Y.2d 605, 445 N.E.2d 656, 459 N.Y.S.2d 1029 (1983). It did not, however, require a new trial and a second bite at the apple. Thus, *Santosky* is inapposite.

After reviewing the record, we conclude that it is inadequate for review of the respondent's claim.

The judgment is affirmed.

In this opinion the other judges concurred.