******************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

*Syllabus*

The respondent mother appealed to this court from the judgments of the trial court terminating her parental rights as to three of her minor children. The trial court found that, pursuant to statute (§ 17a-112 [j] [3] [B] [i]), the mother had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time she could assume a responsible position in the children's lives. She claimed, for the first time on appeal, that the court violated her and her children's substantive due process rights when, in its analysis of the children's best interests, it failed to determine whether the permanency plans for the children that were proposed by the respondent Commissioner of Children and Families secured a more permanent and stable life for them compared to that which she could provide if she were given time to rehabilitate herself. *Held* that the respondent mother's unpreserved claim was not reviewable, as it was not raised during trial and, thus, she failed to provide this court with an adequate record for review of the claim; the trial court found that the petitioner had proved that the children's best interests were served by their living with their maternal grandmother, the mother on appeal did not challenge that and other relevant findings concerning the children's best interests, and this court was unable to discern any evidence in the record about when the maternal grandmother eventually may not be able to continue to provide a home for the children or as to why the children could not then be transitioned to their fictive kin in accordance with the petitioner's plan for their residence with them and possible adoption.

Argued September 5—officially released October 21, 2019**

*Procedural History*

Petitions by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor children, brought to the Superior Court in the judicial district of Middlesex, Child Protection Session at Middletown, where the respondent father was defaulted for failure to appear; thereafter, the matters were tried to the court, *Hon. Barbara M. Quinn*, judge trial referee; judgments terminating the respondents' parental rights, from which the respondent mother appealed to this court. *Affirmed.*

*Matthew C. Eagan*, assigned counsel, with whom was *James P. Sexton*, assigned counsel, for the appellant (respondent mother).

*Evan O'Roark*, assistant attorney general, with whom were *Benjamin Zivyon*, assistant attorney general, and, on the brief, *William Tong*, attorney general, for the appellee (petitioner).

*Christopher DeMatteo*, for the minor children.

*Opinion*

PER CURIAM. The respondent mother appeals from the judgments of the trial court rendered in favor of the petitioner, the Commissioner of Children and Families,[1] terminating her parental rights with respect to each of the three oldest of her four minor children on the grounds that the respondent failed to achieve a sufficient degree of personal rehabilitation pursuant to General Statutes § 17a-112 (j) (3) (B) (i).[2] On appeal, the respondent claims that her and her children's substantive due process rights were violated as a result of the trial court's analysis of whether termination of her parental rights was in the children's best interests. Specifically, the respondent claims that the court's failure to conduct a factual inquiry into the petitioner's three permanency plans, which called for the termination of her parental rights and adoption,[3] in its best interest analysis denied her substantive due process of law. She claims that, because adoption was not going to occur immediately, due process required the court to determine whether the permanency plans secured a more permanent and stable life for each of the children compared to that which she could provide if she were given time to rehabilitate herself.

The record, however, contains insufficient evidence in support of such a claim because it was not raised and pursued by the respondent during trial. Neither the petitioner nor the court were aware, during trial, that it would be asserted as a claim on appeal. Accordingly, for the reasons set forth herein, we decline to review the respondent's unpreserved claim and, therefore, affirm the judgments of the trial court.[4]

The respondent failed to raise her substantive due process claim in the trial court and, accordingly, she seeks review by this court pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).[5] "[A] [respondent] can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [respondent] of a fair trial; and (4) if subject to harmless error analysis, the [petitioner] has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the [respondent's] claim will fail. The appellate tribunal is free, therefore, to respond to the [respondent's] claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original; footnote omitted.) Id., 239–40. In this case, we focus on the first prong of *Golding*.

In assessing whether the first prong of *Golding* has been satisfied, it is well recognized that "[t]he [respondent] bears the responsibility for providing a record that is adequate for review of [her] claim of constitutional error. If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the [respondent's] claim." (Internal quotation marks omitted.) *In re Julianna B.*, 141 Conn. App. 163, 168–69, 61 A.3d 606, cert. denied, 310 Conn. 908, 76 A.3d 625 (2013); *In re Johnson R.*, 121 Conn. App. 464, 469, 994 A.2d 739 (2010), aff'd, 300 Conn. 486, 15 A.3d 145 (2011). "The reason for this requirement demands no great elaboration: in the absence of a sufficient record, there is no way to know whether a violation of constitutional magnitude in fact has occurred." (Internal quotation marks omitted.) *In re Azareon Y.*, 309 Conn. 626, 635, 72 A.3d 1074 (2013).

The record reveals that the respondent and the children's biological father were involved in an abusive relationship for approximately six years. During this relationship, they conceived four children together. On November 1, 2016, the three older children were removed from their parents' care on orders of temporary custody due to ongoing and significant domestic violence between the parents, transience, substance abuse and mental health concerns. The children subsequently were placed with their maternal grandmother, with whom they have resided during the pendency of the proceedings. On March 26, 2018, after the court approved the petitioner's proposed permanency plan for each child; see footnote 7 of this opinion; the petitioner filed petitions for the termination of the respondent's and the father's parental rights as to each of the children, alleging that each of the children had been adjudicated neglected, and that both parents had failed to rehabilitate pursuant to § 17a-112 (j) (3) (B) (i)[6] such that neither could be relied on responsibly to parent their children within the reasonably foreseeable future. A trial was held and, on November 13, 2018, the court granted each of the petitions for termination of parental rights.

The court's memorandum of decision reveals that, during the adjudicatory phase, the court considered the evidence and determined that the respondent failed to achieve sufficient personal rehabilitation pursuant to § 17a-112 (j) (3) (B) (i). In its best interest analysis in the dispositional phase, the court examined relevant factors including "[the children's] interest in sustained growth, development, well-being, stability and continuity of their environment . . . [as well as] their length of stay in foster care, the nature of the relationship with their biological parents, the degree and quality of

contact maintained with the biological parents, and their genetic bonds to the extended family," ultimately concluding that termination of parental rights was in the best interests of each of the three children. The court did not, however, address separately the findings underlying the petitioner's permanency plans for the children.[7] Pursuant to our review of the record, we conclude that the respondent's claim is not reviewable under the first prong of *Golding* because the respondent has failed to provide this court with an adequate record for review.

Our Supreme Court has declined to review a respondent mother's *Golding* claim when the respondent failed to satisfy *Golding*'s first prong. In *In re Azareon Y.*, the respondent mother argued that the "deficiency in the evidentiary record [relevant to whether the permanency plan ordered was the least restrictive means necessary to secure the state's compelling interest in safeguarding the best interests of her children] confirm[ed] that the trial court could not have undertaken the constitutional analysis that substantive due process required." *In re Azareon Y.*, supra, 309 Conn. 633. Similar to the argument put forth by the respondent in the present matter, the respondent in *In re Azareon Y.* relied on the fundamental liberty interest that parents have in the " 'care, custody and control of their children' " to claim that the best interest analysis undertaken by the court was flawed. Id., 636.

The respondent in *In re Azareon Y.* proposed that a judicial gloss be imposed on our termination of parental rights statute, § 17a-112, that places the burden on the petitioner to establish, by clear and convincing evidence, that a statutorily recognized permanency plan shown to be less restrictive than the termination of parental rights would not be appropriate in that case.[8] See id. Our Supreme Court noted that if it were to allow the respondent's attempt to transform her claim of "deficient analysis by the trial court" into a claim alleging a "constitutionally deficient *standard*"; (emphasis in original) id., 639; it would permit future "claim[s] lacking a factual predicate in the record [to] be reframed as a pure legal question as to whether a deficient standard had been applied." Id., 640. Our Supreme Court declined to reach the merits of the respondent's claim.

In the present case, the respondent's claim mirrors that of the respondent in *In re Azareon Y.* First, she asserts that the record contains no evidence relevant to the details of the posttermination likelihood or reality of permanency for each of the children. Like the respondent in *In re Azareon Y.*, she relies on that dearth of evidence to support her argument that the court's best interest analysis was flawed, asserting that without undertaking an inquiry into the details of the likelihood or reality of permanency for the children, the court's analysis could not have been constitutionally proper.

Relying on the same fundamental liberty interest at issue in *In re Azareon Y.*, the respondent argues that "to justify the permanent destruction of the fundamental liberty interests shared by the respondent and her children, the [petitioner] must demonstrate that termination will result in the children being provided a more permanent home than would result from continued reunification efforts."

The petitioner, however, satisfied the court on this point. In the disposition phase of the hearing, the court found that the petitioner did prove that the children's best interests were served by their living with their maternal grandmother: "[T]he children have resided with their maternal grandmother for two years. She has provided these three young children with consistency of care, safety and stability not available in their parental home . . . . [The respondent] has not been able to sufficiently adjust her circumstances, given the safety concerns around domestic violence . . . to have her children returned to her." The respondent on appeal does not challenge these and other relevant findings concerning the best interests of the children.

Additionally, although the maternal grandmother eventually may not be able to continue to provide a home for her grandchildren, we were unable to discern any evidence in the record about when this might occur, and as to why the children could not then be transitioned to the fictive kin[9] in accordance with the petitioner's plan for their residence with them and possible adoption.[10]

"Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by the trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the respondent's claims] would be entirely speculative." (Internal quotation marks omitted.) *State* v. *Duteau*, 68 Conn. App. 248, 254, 791 A.2d 591, cert. denied, 260 Conn. 939, 835 A.2d 58 (2002). It is undisputed that the record contains no evidence supporting alternatives to the general plan of the petitioner to have the children reside with their grandmother until that is no longer possible, and then with the fictive kin. Just as our Supreme Court declined to address the merits of the respondent's claim in *In re Azareon Y.*, we, too, must decline to review the respondent's *Golding* claim in this matter because of her failure to satisfy the first prong of the *Golding* requirements.

The judgments are affirmed.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** October 21, 2019, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Counsel for the minor children has adopted the brief filed by the petitioner.

[2] The parental rights of the children's father also were terminated pursuant to § 17a-112 (j) (3) (B) (1). The father has not participated in this appeal. In this opinion, we refer to the respondent mother as the respondent.

[3] "A 'permanency plan' is the proposal for what the long-term, permanent solution for the placement of the child should be. General Statutes §§ 17a-111b (c) and 46b-129 (k). Our statutory scheme provides five permanency options: (1) reunification with a parent; (2) long-term foster care; (3) permanent guardianship; (4) transfer of either guardianship or permanent guardianship; or (5) termination followed by adoption. General Statutes §§ 17a-111b (c) and 46b-129 (k) (2)." (Footnotes omitted.) *In re Adelina A.*, 169 Conn. App. 111, 121, 148 A.3d 621, cert. denied, 323 Conn. 949, 169 A.3d 792 (2016). In each of the three petitions for termination of parental rights, the petitioner alleged that reasonable efforts to reunify were not required for the respondent because the court had approved a permanency plan other than reunification in accordance with § 17a-111b.

[4] The respondent also argues on appeal that she has standing to bring this substantive due process claim for both herself and her children. Because we decline to reach the merits of her unpreserved claim, we need not address the issue of the respondent's standing to act on behalf of her children.

[5] On March 1, 2019, subsequent to the judgments, the respondent filed a motion for articulation of the decision to terminate her parental rights, which the trial court denied. The respondent filed a motion for review with this court on March 29, 2019. This court granted review but denied the relief requested therein on April 17, 2019.

[6] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts, except that such finding is not required if the court has determined at a hearing pursuant to section 17a-111b, or determines at trial on the petition, that such efforts are not required, (2) termination is in the best interest of the child, and (3) . . . (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected, abused or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[7] The permanency plans proposed by the petitioner stated in relevant part: "The permanency plan for [each of the children] is [t]ermination of [p]arental [r]ights and [a]doption. This is the best plan for the children as [the respondent] and [the father] have not addressed the issues that led the children to be placed in foster care. . . ." The court approved these plans.

[8] The proposed judicial gloss was as follows: "[T]he [trial] court must find by clear and convincing evidence that a viable permanency plan recognized by statute that is less restrictive than termination of parental rights is not capable of providing the children with a permanent, safe and nurturing home in light of their age and needs. The petitioner has the burden of proof as to this finding." (Internal quotation marks omitted.) *In re Azareon Y.*, supra, 309 Conn. 636.

[9] General Statutes § 17a-114 (a) (3) provides in relevant part: "[F]ictive kin caregiver means a person who is twenty-one years of age or older and who is unrelated to a child by birth, adoption or marriage but who has an emotionally significant relationship with such child or such child's family amounting to a familial relationship . . . ." (Internal quotation marks omitted.)

[10] The court's order in the present case is the usual order issued in a termination of parental rights: "The [petitioner] is hereby appointed the statutory parent for [each of the children]. The [petitioner] will file, within thirty days hereof, a report as to the status of these children as required by statute and such further reports shall be timely presented to the court as required by law."

The petitioner, thus, is the statutory parent of each of the children, ulti-

mately and continuously responsible for their guardianship, custody and care in the event of any concerns regarding the maternal grandmother or the fictive kin unless and up to the time an adoption occurs.

This order is predicated on § 17a-112 (o), which provides: "In the case where termination of parental rights is granted, the guardian of the person or statutory parent shall report to the court not later than thirty days after the date judgment is entered on a case plan, as defined by the federal Adoption and Safe Families Act of 1997, as amended from time to time, for the child which shall include measurable objectives and time schedules. At least every three months thereafter, such guardian or statutory parent shall make a report to the court on the progress made on implementation of the plan. The court may convene a hearing upon the filing of a report and shall convene and conduct a permanency hearing pursuant to subsection (k) of section 46b-129 for the purpose of reviewing the permanency plan for the child not more than twelve months from the date judgment is entered or from the date of the last permanency hearing held pursuant to subsection (k) of section 46b-129, whichever is earlier, and at least once a year thereafter while the child remains in the custody of the Commissioner of Children and Families. For children where the commissioner has determined that adoption is appropriate, the report on the implementation of the plan shall include a description of the reasonable efforts the department is taking to promote and expedite the adoptive placement and to finalize the adoption of the child, including documentation of child specific recruitment efforts. At such hearing, the court shall determine whether the department has made reasonable efforts to achieve the permanency plan. If the court determines that the department has not made reasonable efforts to place a child in an adoptive placement or that reasonable efforts have not resulted in the placement of the child, the court may order the Department of Children and Families, within available appropriations, to contract with a child-placing agency to arrange for the adoption of the child. The department, as statutory parent, shall continue to provide care and services for the child while a child-placing agency is arranging for the adoption of the child."

---