******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# IN RE JAVONTE B. ET AL.*
## (AC 47283)

Moll, Westbrook and Flynn, Js.

*Syllabus*

The respondent father appealed to this court from the judgments of the
trial court terminating his parental rights to his minor children, J and
A, who had previously been adjudicated neglected and committed to
the care of the petitioner, the Commissioner of Children and Families.
The trial court determined, pursuant to statute (§ 17a-112 (j)), that the
petitioner established by clear and convincing evidence that statutory
grounds for termination of parental rights existed. The father claimed
that the trial court erred in the dispositional phase of the proceedings
by improperly determining that termination of his parental rights was
in the best interests of the minor children because he had an existing
relationship with the minor children and because he was bonded to
them. *Held* that the trial court's determination that termination of the
father's parental rights was in the best interests of the minor children
was not clearly erroneous: the unchallenged factual findings regarding
the father's parental deficiencies, the likelihood that those deficiencies
would continue in the future, and the need for the children to have
stability in their lives supported the trial court's determination, and,
although the father directed this court's attention to other findings that
were favorable to his position, specifically, that he had regular contact
with A for a period of six months, and that he has affection for his
children, did not provide this court with a basis to reverse the trial
court's determination; moreover, there was an abundance of evidence
presented to support the trial court's determination, including, inter alia,
the fact that the father had no ongoing parent-child relationship with
the minor children, his refusal to support their therapeutic needs that

---

* In accordance with the spirit and intent of General Statutes § 46b-142
(b) and Practice Book § 79a-12, the names of the parties involved in this
appeal are not disclosed. The records and papers of this case shall be open
for inspection only to persons having a proper interest therein and upon
order of the court.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3)
(2018), as amended by the Violence Against Women Act Reauthorization
Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to
identify any person protected or sought to be protected under a protection
order, protective order, or a restraining order that was issued or applied
for, or others through whom that person's identity may be ascertained.

addressed their exposure to trauma, his refusal to cooperate with therapeutic interventions for himself, and his refusal to participate in substance abuse treatment and intimate partner violence programs.

Argued May 13—officially released July 8, 2024**

*Procedural History*

Petitions by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor children, brought to the Superior Court in the judicial district of New London, Juvenile Matters at Waterford, and tried to the court, *Hon. John C. Driscoll*, judge trial referee; judgments terminating the respondents' parental rights, from which the respondent father appealed to this court. *Affirmed*.

*David B. Rozwaski*, assigned counsel, for the appellant (respondent father).

*Brian E. Tetreault*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Nisa Khan*, assistant attorney general, for the appellee (petitioner).

*Opinion*

WESTBROOK, J. The respondent father, Amaris B., appeals from the judgments of the trial court rendered in favor of the petitioner, the Commissioner of Children and Families (commissioner), terminating his parental rights with respect to his minor children, J and A.[1] On appeal, the respondent claims that the court improperly concluded that it was in the best interests of the children to terminate his parental rights because, contrary to

---

** July 8, 2024, the date that this opinion was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The parental rights of the respondent mother, Crystal G., were terminated by consent. The termination of the respondent mother's parental rights is not at issue on appeal. Accordingly, all references to the respondent are to the father only.

We also note that the attorney for the minor children has filed a statement, pursuant to Practice Book § 79a-6 (c), adopting the brief of the petitioner.

the determination of the court, he had an existing relationship and bond with his children.[2] We affirm the judgments of the trial court.

The following relevant facts, which the court found by clear and convincing evidence, and procedural history are relevant to the resolution of this appeal. J was

[2] To the extent that the respondent's brief can also be read as raising a claim that the trial court was constitutionally required to consider whether a less restrictive alternative to the termination of parental rights existed—specifically, a transfer of guardianship—we decline to review this claim because it has been inadequately briefed. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 803, 256 A.3d 655 (2021). The respondent fails to provide any legal analysis in support of this claim and, instead, merely asserts that "the trial court erred in finding that it was in the best interests of the children to grant the petition for termination of parental rights, even though the minor children are placed with relatives and a least restrictive alternative to termination and adoption, such as transfer of guardianship or some other less restrictive disposition should have been made by the trial court." Because this conclusory statement is not accompanied by any analysis or citation to legal authority, we conclude that this claim is inadequately briefed and decline to review it.

In addition, the respondent's least restrictive alternative claim is unpreserved and fails the first prong of *Golding*. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989) ("[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error . . . . In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis omitted; footnote omitted.)), as modified by *In re Yasiel R.*, 317 Conn. 773, 120 A.3d 1188 (2015). Because the respondent failed to bring this claim before the trial court, the court made no express factual findings as to whether a less restrictive alternative, such as transfer of guardianship, existed. At oral argument before this court, counsel for the respondent conceded that the respondent did not raise the issue with the trial court and that the unpreserved claim is not reviewable on appeal. The record is therefore inadequate to review the claim. See *In re Azareon Y.*, 309 Conn. 626, 637, 72 A.3d 1074 (2013) ("the record must reflect whether there is a valid alternative permanency plan to termination and adoption"); see also *In re Skylar B.*, 204 Conn. App. 729, 745, 254 A.3d 928 (2021); *In re Riley B.*, 203 Conn. App. 627, 639, 248 A.3d 756, cert. denied, 336 Conn. 943, 250 A.3d 40 (2021); *In re Madison C.*, 201 Conn. App. 184, 194, 241 A.3d 756, cert. denied, 335 Conn. 985, 242 A.3d 480 (2020); *In re Julianna B.*, 141 Conn. App. 163, 171, 61 A.3d 606, cert. denied, 310 Conn. 908, 76 A.3d

born in March, 2017, and A was born in April, 2018. The Department of Children and Families (department) first became involved with J in August, 2017, when the petitioner filed a neglect petition and sought an order of temporary custody on J's behalf. The court issued the order for temporary custody and, subsequently, vacated the order of temporary custody and ordered six months of protective supervision, which expired in March, 2018.

In December, 2019, the department received a report alleging that the respondent had assaulted the children's mother in the presence of J. The respondent was arrested[3] and a full no contact protective order was issued against the respondent with J as a protected party. J has not seen the respondent since the incident, and both children thereafter remained in the mother's care. After the department was informed of the incident, the department investigated and substantiated reports that the respondent physically neglected J and A.

In October, 2021, the department received a report that the children were dirty, disheveled, and improperly supervised.[4] Following an investigation into the report, the petitioner filed neglect petitions on behalf of the children and sought orders of temporary custody. On October 8, 2021, the court, *Hoffman, J.*, granted an ex parte order for temporary custody of the children, and

625 (2013). In short, we decline to review the respondent's less restrictive alternative claim.

[3] The respondent was arrested for disorderly conduct, assault in the second and third degrees, carrying a dangerous weapon, and risk of injury to a child.

[4] In its memorandum of decision granting the petitions to terminate parental rights, the court found the following: "On October 1, 2021, the Groton Town Police Department reported to the petitioner that a woman was sitting in front of a local store for three or four hours while with young children. This woman identified herself as a friend of the mother and gave no clear indication of the mother's whereabouts or contact information. . . . Family members were reached and provided short-term care for the children. The mother surfaced, reported that she was homeless, and had no reasonable alternative to offer."

the department placed them in the care of their maternal great aunt and uncle. On October 15, 2021, the respondent appeared in court, and the court, *Hon. John C. Driscoll*, judge trial referee, sustained the order of temporary custody. On November 16, 2021, the respondent submitted a plea of nolo contendere and the court, *Hoffman, J.*, adjudicated the children neglected and committed them to the care and custody of the petitioner. On September 6, 2022, the court approved the petitioner's permanency plan of termination of parental rights and adoption.

In October, 2021, and again in November, 2021, the court ordered the respondent to follow specific steps to facilitate reunification with J and A: keep all appointments with the department; participate in counseling and make progress toward treatment goals; submit to a substance use evaluation and follow recommendations about treatment; abstain from the use of illegal drugs; cooperate with court-ordered evaluations or testing; maintain adequate housing and income; comply with the protective order; complete a domestic violence treatment program; take care of the children's emotional needs; cooperate with the children's therapy; and visit the children as often as permitted.

The court found that the respondent failed to comply with most of the ordered reunification steps. The respondent stated that he had no intention to seek employment upon release from incarceration. He refused to cooperate with an assessment by Nancy Randall, the court-appointed evaluator and psychologist. He also rejected Dr. Randall's recommendations to participate in substance use treatment at an outpatient facility and an intimate partner violence program. The respondent did not make any attempt to modify the protective order that prevented him from contacting J. The respondent did have a period of successful visitations with A from December, 2021, through July, 2022.

In July, 2022, however, the respondent was sentenced to ten years of incarceration suspended after two years with a three year period of probation. Although the department offered the respondent visitation with A during his incarceration, he declined all visitation until he is released.

On March 10, 2023, the petitioner filed petitions to terminate the respondent's parental rights to J and A. The trial took place on July 24, 2023. On November 17, 2023, the court issued a memorandum of decision, in which it granted the petitions to terminate the respondent's parental rights. The court made extensive findings of fact and concluded that the petitioner had met her burden of establishing by clear and convincing evidence that statutory grounds for termination existed and that termination was in the best interests of the minor children.

As to the adjudicatory phase, in accordance with General Statutes § 17a-112,[5] the petitioner alleged the

---

[5] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court . . . may grant a petition [to terminate parental rights] if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent . . . unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . (2) termination is in the best interest of the child, and (3) (A) the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected, abused or uncared for in a prior proceeding, or (ii) is found to be neglected, abused or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent . . . and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child; (C) the child has been denied, by reason of an act or acts of parental commission or omission including, but not limited to, sexual molestation or exploitation, severe physical abuse or a pattern of abuse, the care, guidance or control necessary for the child's physical, educational, moral or emotional well-

following statutory grounds for termination of parental rights: (1) the children were adjudicated neglected in a prior proceeding, (2) the respondent failed to achieve a sufficient degree of personal rehabilitation, and (3) with respect to J, there was no ongoing parent-child relationship. The court determined that the petitioner established by clear and convincing evidence that statutory grounds for termination of parental rights existed. The court found that the respondent failed to achieve a sufficient degree of personal rehabilitation that would encourage the belief that, within a reasonable time, considering the ages and needs of the children, the respondent could assume a responsible position in the life of either child. The court additionally found that, although the department made reasonable efforts to locate the respondent and to reunify the children with the respondent, the respondent was unable and unwilling to benefit from reunification efforts. With respect to J, the court found that the respondent made no effort to modify the criminal protective order, and, with respect to A, he declined visitation while he was incarcerated in 2022. The court also found that the respondent was unable and unwilling to meet the children's therapeutic needs. In the dispositional phase, the court

being, except that nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights; (D) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child; (E) the parent of a child under the age of seven years who is neglected, abused or uncared for, has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families. . . ."

determined that termination of the respondent's parental rights was in the best interests of the children. In making this determination, the court considered the importance of long-term stability and the need for expedient custodial determinations. The court found that the respondent had not been, and would not be, a safe, responsible, and nurturing parent for the children. This appealed followed. Additional facts will be set forth as necessary.

Before discussing the respondent's claim on appeal, we briefly set forth the standard of review and relevant legal principles that govern our review. "Proceedings to terminate parental rights are governed by . . . § 17a-112. . . . Under § 17a-112, a hearing on a petition to terminate parental rights consists of two phases: the adjudicatory phase and the dispositional phase. During the adjudicatory phase, the trial court must determine whether one or more of the . . . grounds for termination of parental rights set forth in § 17a-112 [(j) (3)] exists by clear and convincing evidence. . . . If the trial court determines that a statutory ground for termination exists, then it proceeds to the dispositional phase. During the dispositional phase, the trial court must determine whether termination is in the best interests of the child. . . . The best interest determination also must be supported by clear and convincing evidence." (Internal quotation marks omitted.) *In re Niya B.*, 223 Conn. App. 471, 476 n.5, 308 A.3d 604, cert. denied, 348 Conn. 958, 310 A.3d 960 (2024).

"In the dispositional phase of a termination of parental rights hearing, the emphasis appropriately shifts from the conduct of the parent to the best interest of the child. . . . It is well settled that we will overturn the trial court's decision that the termination of parental rights is in the best interest of the [child] only if the court's findings are clearly erroneous. . . . The best interests of the child include the child's interests in

sustained growth, development, well-being, and conti-
nuity and stability of [his or her] environment. . . . In
the dispositional phase of a termination of parental
rights hearing, the trial court must determine whether
it is established by clear and convincing evidence that
the continuation of the respondent's parental rights is
not in the best interest of the child. In arriving at this
decision, the court is mandated to consider and make
written findings regarding seven factors delineated in
[§ 17a-112 (k)].[6] . . . The seven factors serve simply
as guidelines for the court and are not statutory prereq-
uisites that need to be proven before termination can
be ordered. . . . There is no requirement that each
factor be proven by clear and convincing evidence."
(Footnote added; internal quotation marks omitted.) *In*

---

[6] General Statutes § 17a-112 (k) provides: "Except in the case where termi-
nation of parental rights is based on consent, in determining whether to
terminate parental rights under this section, the court shall consider and
shall make written findings regarding: (1) The timeliness, nature and extent
of services offered, provided and made available to the parent and the child
by an agency to facilitate the reunion of the child with the parent; (2)
whether the Department of Children and Families has made reasonable
efforts to reunite the family pursuant to the federal Adoption and Safe
Families Act of 1997, as amended from time to time; (3) the terms of any
applicable court order entered into and agreed upon by any individual or
agency and the parent, and the extent to which all parties have fulfilled
their obligations under such order; (4) the feelings and emotional ties of
the child with respect to the child's parents, any guardian of such child's
person and any person who has exercised physical care, custody or control
of the child for at least one year and with whom the child has developed
significant emotional ties; (5) the age of the child; (6) the efforts the parent
has made to adjust such parent's circumstances, conduct, or conditions to
make it in the best interest of the child to return such child home in the
foreseeable future, including, but not limited to, (A) the extent to which
the parent has maintained contact with the child as part of an effort to
reunite the child with the parent, provided the court may give weight to
incidental visitations, communications or contributions, and (B) the mainte-
nance of regular contact or communication with the guardian or other
custodian of the child; and (7) the extent to which a parent has been
prevented from maintaining a meaningful relationship with the child by
the unreasonable act or conduct of the other parent of the child, or the
unreasonable act of any other person or by the economic circumstances of
the parent."

*re Alison M.*, 127 Conn. App. 197, 211, 15 A.3d 194 (2011).

"[A]n appellate tribunal will not disturb a trial court's finding that termination of parental rights is in a child's best interest unless that finding is clearly erroneous. . . . On appeal, our function is to determine whether the trial court's conclusion was factually supported and legally correct. . . . In doing so, however, [g]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *In re Davonta V.*, 285 Conn. 483, 488, 940 A.2d 733 (2008); see also *In re Brayden E.-H.*, 309 Conn. 642, 657, 72 A.3d 1083 (2013). "[T]he balancing of interests in a case involving termination of parental rights is a delicate task and, when supporting evidence is not lacking, the trial court's ultimate determination as to a child's best interest is entitled to the utmost deference. . . . Although a judge [charged with determining whether termination of parental rights is in a child's best interest] is guided by legal principles, the ultimate decision [whether termination is justified] is intensely human. It is the judge in the courtroom who looks the witnesses in the eye, interprets their body language, listens to the inflections in their voices and otherwise assesses the subtleties that are not conveyed in the cold transcript." (Internal quotation marks omitted.) *In re Nevaeh W.*, 317 Conn. 723, 740, 120 A.3d 1177 (2015).

On appeal, the respondent does not contest the court's findings in the adjudicatory phase of the proceedings, namely, that he failed to achieve rehabilitation. Instead, the respondent claims that the court erred

in the dispositional phase because it improperly determined that termination of his parental rights was in the best interests of the children. Specifically, the respondent argues that termination was not in the best interests of J and A because he had an existing relationship and bond with them. We disagree.

In reaching the determination that the termination of the respondent's parental rights was in the children's best interests, the court made the required findings as to each of the statutory factors provided by § 17a-112 (k). The court determined that (1) the petitioner had made timely services available to the respondent, including a psychological evaluation, substance use treatment, domestic violence counseling, and mental health treatment, (2) the petitioner made reasonable efforts to reunify the respondent and the children, (3) the respondent's compliance with reunifications steps was minimal, (4) neither child has a bond with the respondent, but both children have a bond with their foster parents, (5) J was six years old and A was five years old, (6) the respondent made no sustained effort to improve his circumstances and has had no contact with J since 2019, or with A since 2022, and (7) there was no unreasonable conduct by any party that prevented the respondent from maintaining a relationship with the children.

After discussing the § 17a-112 (k) factors, the court found that both children have been exposed to serious trauma and need a safe and secure placement in which they can trust their caregiver. They both required therapeutic intervention and will likely need therapy in the future as well. The respondent, however, has no insight into or interest in his children's needs. Nor does he have interest in controlling his excessive substance use or addressing his propensity for violence. The court additionally found that the children would be at risk if placed with the respondent. In light of "the children's

need for a secure, permanent placement, and the totality of the circumstances," the court determined, by clear and convincing evidence, that terminating the respondent's parental rights was in the best interests of J and A.

The respondent does not challenge any particular finding made by the court in support of its best interests determination. Instead, the respondent claims that termination of his parental rights was not in the best interests of J and A because he had an existing relationship with the children.

The respondent first argues that he did not "cut off" all contact with his children. The court found that the respondent made no effort to modify the protective order that prevented him from contacting J, and that, despite the option to continue visitation while he was incarcerated, he declined all visitation with A after July, 2022. The respondent does not challenge these findings. Instead, he urges this court to consider the *reason* he failed to have visitation with both children, arguing that he declined to have visits with either child while incarcerated because he did not want his children brought into a prison setting. There is no evidence in the record, however, that supports the respondent's reason for denying visitation. The respondent did not testify about his reasoning at trial and his counsel's closing argument does not constitute evidence of the respondent's motive.[7]

---

[7] At trial, the respondent did not testify. Subsequently, during closing arguments, the respondent's counsel stated that "[the respondent] acted responsibly when he was incarcerated, and he waived exercising his right for visitation because he didn't want the children to be exposed to the setting that he was in." "Statements and arguments of counsel are not evidence." *RAL Management, Inc.* v. *Valley View Associates*, 102 Conn. App. 678, 684, 926 A.2d 704 (2007). Moreover, the court expressly informed the respondent that any statements made during closing arguments would not constitute evidence. Specifically, the court stated the following: "My understanding is you wish during the final argument to make a statement. I want to make sure you're clear that's not evidence; it's in the nature of the arguments that I want to hear from all the lawyers or any statement a foster parent may make. It's not evidence; it's just your view of the matter,

Furthermore, the respondent elected not to have contact with either child even though the specific steps[8] required the respondent to visit the children as often as permitted. Regardless of the respondent's reason for denying visitation, the court found that his failure to visit the children showed a lack of insight and concern for his children's emotional needs. Thus, the respondent has not persuaded this court that the trial court committed any error in reaching this conclusion.

The respondent also argues that the court erred in terminating his parental rights because his affection for his children is "undisputed." Although he may have affection for his children, "it still may be in the [children's] best interest[s] to terminate parental rights." (Internal quotation marks omitted.) *In re Ryder M.*, 211 Conn. App. 793, 821, 274 A.3d 218, cert. denied, 343 Conn. 931, 276 A.3d 433 (2022). The court found that the respondent "may claim to love [his children], but this proclamation does not constitute competence. He has no insight into their needs or his own deficits." Additionally, the court found that "[t]he children are bonded fully with their foster parents, in whose home the children feel safe and secure." Thus, the respondent's affection for his children does not provide this court with a reason to disturb the trial court's best interests determination.

There was an abundance of evidence presented to support the court's determination that termination of the respondent's parental rights was in the best interests

and then the court can take into account your view as well as the view of all other parties." Because the respondent did not testify and counsel's statements do not constitute evidence, there is no evidence on the record for us to consider the respondent's reason for declining visitation during his incarceration.

[8] The specific steps issued for the respondent on October 8, 2021, stated in relevant part: "If the case is under an order of temporary custody or commitment, visit the child(ren) as often as permitted and keep the child(ren) in the [s]tate of Connecticut."

of the children. The respondent has no ongoing parent-child relationship with his children. He made no effort to modify the protective order so that he could have contact with J, and he declined all visitation with the children while he was incarcerated in 2022. The children have no bond with the respondent. Additionally, the children have therapeutic needs to address their exposure to trauma, and the respondent is unable or unwilling to meet those needs. He has refused to cooperate with therapeutic interventions for himself as well as the children. In addition to rejecting visitation and therapeutic services, the respondent refused to participate in substance abuse treatment and intimate partner violence programs. The children require a safe, dependable, nurturing home.

Affording the utmost deference to the court's decision, we conclude that the court's best interests determination was not clearly erroneous. The court's unchallenged factual findings regarding the respondent's parental deficiencies, the likelihood that those deficiencies would continue into the future, and the need for the children to have stability in their lives support the court's determination. Although the respondent directs our attention to other findings that are more favorable to his position, specifically, that he had regular contact with A between December, 2021, and July, 2022, and that he has affection for his children, these facts do not provide us a basis to reverse the court's determination. "We decline the respondent's invitation to place more emphasis on certain of the court's findings so that we might reach a conclusion on appeal that differs from that of the trial court." *In re Malachi E.*, 188 Conn. App. 426, 446, 204 A.3d 810 (2019) (affirming trial court's determination that termination of parental rights was in child's best interest). We conclude that the court's determination that termination of the respondent's

parental rights was in the best interests of J and A was not clearly erroneous.

The judgments are affirmed.

In this opinion the other judges concurred.