******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

IN RE MADISON C. ET AL.*
(AC 43721)

Bright, C. J., and Suarez and Lavery, Js.

*Syllabus*

The respondent mother appealed from the judgments of the trial court terminating her parental rights with respect to her three minor children. She claimed that the trial court deprived her of her substantive due process rights under the United States constitution because termination of her parental rights was not the least restrictive means necessary to ensure the state's compelling interest in protecting the best interests of the children, and that the record disclosed that narrower means were available to protect the children from harm and afford them statutory permanency. *Held* that this court declined to review the respondent's unpreserved constitutional claim because the inadequate record failed to satisfy the requirement of the first prong of *State* v. *Golding* (213 Conn. 233); the evidence at trial supported the decision of the petitioner, the Commissioner of Children and Families, to pursue termination of the respondent's parental rights, the respondent did not propose any alternative permanency plans, and, after the trial court granted the termination petitions, the respondent did not attempt to raise her claim by filing a motion to reargue or reconsider, nor did she ask the court to articulate whether it had considered other options, and the respondent's failure to pursue any of these avenues left the record devoid of evidence and findings necessary to review her constitutional claim.

Argued September 9—officially released October 29, 2020**

*Procedural History*

Petitions by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor children, brought to the Superior Court in the judicial district of New Britain, Juvenile Matters, where the petitions were withdrawn as to the respondent father; thereafter, the matter was tried to the court, *Aaron, J.*; judgments terminating the respondent mother's parental rights, from which the respondent mother appealed to this court. *Affirmed.*

*Albert J. Oneto IV*, assigned counsel, for the appellant (respondent mother).

*Alina Bricklin-Goldstein*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Opinion*

SUAREZ, J. The respondent mother, Patricia K., appeals from the judgments of the trial court rendered in favor of the petitioner, the Commissioner of Children and Families, terminating her parental rights with respect to each of her three minor children on the ground that the respondent failed to achieve a sufficient degree of personal rehabilitation pursuant to General Statutes § 17a-112 (j) (3) (B) (i).[1] On appeal, the respondent claims that the court deprived her of her substantive due process rights as guaranteed by the fourteenth amendment to the United States constitution because termination of her parental rights was not the least restrictive means necessary to ensure the state's compelling interest in protecting the best interests of the children. As part of her claim, the respondent further asserts that the record disclosed that narrower means other than termination were available to protect the children from harm and afford them statutory permanency. We conclude that the record was inadequate to review the respondent's constitutional claim, and, accordingly, we affirm the judgments of the trial court.

The following facts, as found by the court, and procedural history are relevant to the claim raised on appeal. Madison, Ryan, and Andrew were born to the respondent and their father, Chester C. The Department of Children and Families (department) became involved with the family in November, 2013, when Madison tested positive for marijuana and methadone upon her birth. Upon discharge from the hospital, Madison was released into the care of her parents. In December, 2015, the respondent gave birth to Ryan, who also tested positive for marijuana and methadone. Ryan subsequently was released from the hospital to the care of his parents.

On April 25, 2017, the Plymouth Police Department responded to reports of a domestic dispute between the respondent and Chester C. The Plymouth police found the couple's home in deplorable condition and located drug paraphernalia inside the home. On May 2, 2017, Madison and Ryan were removed from their parents' home, pursuant to an order of temporary custody filed by the petitioner and granted by the court. The children were placed in a licensed, nonrelative foster home. The petitioner also filed a neglect petition alleging that the children were being permitted to live under conditions, circumstances, or associations injurious to their well-being. The order of temporary custody was sustained by agreement of the parties on May 12, 2017.

In November, 2017, the respondent gave birth to Andrew, who tested positive for marijuana, methadone, and cocaine. On November 20, 2017, the court granted an order of temporary custody as to Andrew, and he was placed in his current, nonrelative foster family upon dis-

charge from the hospital. On the same date, the petitioner filed a neglect petition as to Andrew on the basis of predictive neglect.

The neglect petitions with respect to all three children were consolidated on November 30, 2017. The court adjudicated the children neglected and committed the children to the care and custody of the petitioner until further order by the court. On the same date, the court ordered specific steps with which the parents were required to comply.

On February 1, 2019, the petitioner filed termination of parental rights petitions with respect to the parental rights of the respondent and Chester C. as to their three children on the grounds that the court in the prior proceeding found the children to have been neglected, and they had failed to achieve the degree of personal rehabilitation that would encourage the belief that, within a reasonable time and considering the ages and needs of the children, they could assume a responsible position in their children's lives.

The respondent has a long history of substance abuse, specifically with heroin, and has been on methadone maintenance intermittently since 2012. The department reported that "[h]er success in treatment has oscillated, with periods of sobriety interrupted by intense relapses."

The respondent's substance abuse issues have led to numerous interactions with the criminal justice system. In April, 2017, the respondent was arrested and charged with risk of injury to a child in connection with the incident that led to the removal of Madison and Ryan. In July, 2018, the respondent was arrested for stealing a generator from Home Depot and later charged with fifth degree larceny. On July 17, 2018, she was arrested and later charged with driving with a suspended license and other motor vehicle charges. On October 18, 2018, due to possessing hypodermic needles and crack pipes, the respondent was arrested and later charged with, inter alia, possession of drug paraphernalia, possession of cocaine and five bags of heroin, and operating a motor vehicle with a suspended license. On March 10, 2019, the respondent was arrested and charged with breach of the peace. She also has a history of not appearing in court and has resultant failure to appear charges. During the underlying termination of parental rights trial, the respondent was incarcerated as a result of the April, 2017 arrest for risk of injury to a minor, having been sentenced on April 17, 2019, to seven years of incarceration, execution suspended after eighteen months, and three years of probation.

A trial was held on August 5, 6, 7, and 16, 2019. The petitioner called three witnesses and entered seventeen exhibits into evidence. The respondent did not call any witnesses and did not introduce any exhibits. On August 16, the petitioner withdrew its termination petitions as

to Chester C.

On November 8, 2019, the court, in a thorough memorandum of decision, granted the termination petitions as to the respondent. In the adjudicatory phase of the trial, the court found, by clear and convincing evidence, that the department made reasonable efforts to reunify the respondent with the children pursuant to § 17a-112 (j) (1), and that she remained unwilling or unable to benefit from services. The court based its decision on the respondent's failure to follow through with the specific steps that were agreed upon and ordered by the court, along with her unwillingness or inability to maintain her sobriety.

The court further found, by clear and convincing evidence, that the respondent had not and will not achieve the degree of personal rehabilitation that would encourage the belief that within a reasonable time, considering the ages and needs of all three children, she could assume a responsible position in their lives. The court stated that the petitioner remained unable to be an appropriate caretaker for the children and that there was no evidence or reason to believe that she would be able to assume a responsible position in the children's lives within a reasonable time.

In the dispositional phase, the court made findings on the seven criteria set out in § 17a-112 (k) as to the best interests of the children. The court examined the relevant factors related to the children's development, mental and emotional health, safety, long-term stability, their relationship with their respective foster parents, and their relationship with the petitioner. The court noted that the respondent had not successfully taken advantage of or complied with the services provided by the department and had not shown a willingness or ability to provide a safe and nurturing environment in which she appropriately could parent the children. Additionally, the court found that there was credible evidence to suggest that the "toxic relationship between the parents and [the] respondent's overbearing and manipulative behavior toward [Chester C.] is an impediment to [Chester C.'s] effective parenting of the children." This appeal followed. Additional facts and procedural history will be set forth as necessary.

On appeal, the respondent does not challenge the trial court's adjudicatory findings. Rather, she claims that the court deprived her of her substantive due process rights as guaranteed by the fourteenth amendment to the United States constitution because termination of her parental rights was not the least restrictive means necessary to ensure the state's compelling interests in protecting the best interests of the children. The respondent argues that narrower means, other than termination, were available to protect the children from harm and afford them statutory permanency. She concedes that this claim of constitutional error was not presented

at trial. Accordingly, she seeks review under the bypass doctrine codified in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). The petitioner responds that the record is inadequate for review of the claim. We agree with the petitioner.

"Under *Golding*, a [party] can prevail on a claim of constitutional error not preserved at trial only if the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [party] of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the [party's] claim will fail. The appellate tribunal is free, therefore, to respond to the [party's] claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *In re Adelina A.*, 169 Conn. App. 111, 119, 148 A.3d 621, cert. denied, 323 Conn. 949, 169 A.3d 792 (2016).

"In assessing whether the first prong of *Golding* has been satisfied, it is well recognized that [t]he [respondent] bears the responsibility for providing a record that is adequate for review of [her] claim of constitutional error. If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the [respondent's] claim. . . . The reason for this requirement demands no great elaboration: in the absence of a sufficient record, there is no way to know whether a violation of constitutional magnitude in fact has occurred." (Citations omitted; internal quotation marks omitted.) *In re Anthony L.*, 194 Conn. App. 111, 114–15, 219 A.3d 979 (2019), cert. denied, 334 Conn. 914, 221 A.3d 447 (2020).

In the present appeal, the crux of the respondent's argument is that there were less restrictive alternatives to the termination of her parental rights and that the court violated her substantive due process rights by failing to consider these alternatives. She argues that when the petitioner withdrew the termination petitions as to Chester C., the state's plan was no longer to place the children for adoption but to reunify them with him. The respondent argues that after this decision was made, termination of her parental rights was no longer necessary. The respondent asserts that alternatives to termination were appropriate because the court did not base its decision on a finding that she posed a physical threat to the safety of the children or that she would

abuse her parental status in ways that could harm the children if the children were reunified with Chester C. Rather, she argues, the court based its decision to terminate on its concern that she was "an impediment to [the] father's effective parenting of the children." She contends that the trial court's concerns about the potential for her to undermine Chester C.'s parenting could have been addressed through further orders limiting her guardianship, rather than by terminating her parental rights. Her brief, however, lacks specificity as to how she believes the trial court should have addressed its concerns.

In *In re Azareon Y.*, 309 Conn. 626, 72 A.3d 1074 (2013), our Supreme Court addressed a similar claim. On appeal, the respondent in *In re Azareon Y.* sought review under *Golding* of a claim that she previously had not advanced, "namely, that the trial court's application of § 17a-112 to her was unconstitutional because substantive due process required the trial court to find by clear and convincing evidence that termination of her parental rights was the least restrictive means necessary to ensure the state's compelling interest in protecting the children's safety and well-being (best interests), and no such finding was made." Id., 630. At trial, the respondent did not request the court to consider any alternatives to the petitioner's permanency plan. Id., 632. The trial court's memorandum of decision did not indicate whether the court considered a permanency plan other than the one advocated by the petitioner, and the respondent did not ask the court to articulate whether it had considered other options. Id., 632–33. In determining that the record was inadequate for review under *Golding*'s first prong, our Supreme Court stated that the respondent was attempting to "characterize her claim as a mere question of law lacking factual predicates beyond those she has cited." Id., 637. The court declined to reach the merits of the claim. See id., 638.

More recently, this court considered an appeal in which a respondent mother claimed that the trial court had violated her substantive due process rights during its best interest analysis by failing to conduct a factual inquiry into the petitioner's permanency plans, which called for the termination of her parental rights and adoption. *In re Anthony L.*, supra, 194 Conn. App. 112–13. The respondent in *In re Anthony L.* claimed that, "because adoption was not going to occur immediately, due process required the court to determine whether the permanency plans secured a more permanent and stable life for each of the children compared to that which she could provide if she were given time to rehabilitate herself." Id., 113. She did not raise or pursue this claim at trial, however, nor did she make the trial court and the petitioner aware that she would assert this claim on appeal. Id. This court stated that "the respondent's claim mirrors that of the respondent in

*In re Azareon Y.*," and we went on to apply the same reasoning as our Supreme Court in that case. Id., 118. Accordingly, this court determined that the record contained insufficient evidence and declined to review the respondent's request for *Golding* review in light of an inadequate record. Id., 120.

Here, the facts are analogous to both *In re Anthony L.* and *In re Azareon Y.* At trial, the petitioner called three witnesses to testify. Each witness' testimony provided support for the petitioner's decision to pursue termination of the respondent's parental rights. Derek A. Franklin, a licensed clinical psychologist and the court-appointed evaluator, testified that it was unlikely that the respondent would be able to achieve a degree of rehabilitation that is sustainable. He stated that the respondent had co-opted Chester C. and that they had a pathological, one-sided relationship. He further opined that any consideration of the children's reunification with Chester C. would be contingent upon Chester C.'s distancing himself from the respondent because, otherwise, reunification would serve as a conduit for the respondent to have access to the children. On cross-examination by counsel for Chester C., Franklin testified that Chester C. appeared to be unduly influenced by the respondent such that, even if he followed through with all of the other steps for rehabilitation, reunification may not be viable.

Chanel Cranford, a social worker for the department, testified that at the time the department received the case, its plan was to pursue reunification. This plan changed, however, when the department determined that Chester C. still lacked insight into how the respondent's substance abuse and untreated mental health issues would affect the children. This decision was further influenced by the department's findings that the respondent was not participating in the substance abuse and mental health treatment programs that the department provided for her.

Rachelle Chevalier-Jackson, the owner of Ahava Family Services (Ahava), testified about the parent education program and supervised visitation services in which the respondent participated. After participating in Ahava's parent education program for several weeks, the respondent withdrew from the program and indicated that she no longer wanted to take direction from its staff. Chevalier-Jackson also testified that there were instances in which the respondent was argumentative with staff members. When staff members relayed concerns about the respondent's behavior to Chester C., he decided to start visiting the children separately.

At trial, the respondent did not propose any alternative permanency plans. In fact, the only possible reference to an alternative plan came, not during the presentation of evidence, but during closing arguments when the respondent's counsel stated: "If your plan is to

reunify with the father and not free these children for adoption, I submit that my client's parental rights should not be terminated in this matter."

After the trial court granted the termination petitions, the respondent did not attempt to raise this claim by filing a motion to reargue or reconsider, nor did she ask the court to articulate whether it had considered other options. The respondent's failure to pursue any of these avenues left the record devoid of evidence and findings necessary to review her constitutional claim.

The respondent attempts to rely on our Supreme Court's decision in *In re Brayden E.-H.*, 309 Conn. 642, 72 A.3d 1083 (2013). In that case, the trial court terminated a respondent mother's parental rights on the basis of evidence of substance abuse and mental health issues, a "chronic history of relapses and failed substance abuse treatment," and numerous interactions with the criminal justice system. (Internal quotation marks omitted.) Id., 647–49. The trial court granted permanent legal guardianship to the children's paternal great-aunt and her husband, and declined to terminate the father's parental rights. Id., 644 and n.1. After the trial court issued its decision, the respondent filed a motion to reargue in which she asserted that the substantive due process clauses of the state and federal constitutions required the petitioner to prove that termination was the least restrictive permanency plan available to secure the best interests of the children. Id., 653–54. She presented less restrictive alternatives to termination, including "severely circumscrib[ing] visitation rights with her children," which would have addressed the court's concerns while allowing her to maintain a legal relationship with her children. (Internal quotation marks omitted.) Id., 654.

Our Supreme Court found that the respondent preserved this constitutional claim by filing a motion to reargue but it declined to address the constitutional question, in part, because the record made it "readily apparent" that the respondent was not entitled to the relief she sought. Id., 656–57. The court also noted that, even if it was to assume that such a right existed; id., 657; the trial court's decision revealed that the standard was met because it concluded that "*any* avenue that would permit the respondent to exert *any* further control or influence over the children would undermine the guardians' relationship with the children and would be contrary to the children's best interests." (Emphasis in original.) Id., 661–62.

Unlike the respondent in *In re Brayden E.-H.*, the respondent here never proposed a plan that would have addressed the court's concerns while allowing her to maintain a legal relationship with the children. In the absence of such a proposal, the court had no factual predicates upon which to make a finding.

"Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by the trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the respondent's claims] would be entirely speculative." (Internal quotation marks omitted.) *In re Anthony L.*, supra, 194 Conn. App. 119–20. Accordingly, we decline to review the respondent's unpreserved constitutional claim because the inadequate record fails to satisfy the requirement of *Golding*'s first prong.

The judgments are affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** October 29, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Counsel for the three minor children have each adopted the brief filed by the petitioner.