******************************************************************

   The ''officially released'' date that appears near the beginning of this opinion is the date the opinion was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

   This opinion is subject to revisions and editorial changes, not of a substantive nature, and corrections of a technical nature prior to publication in the Connecticut Law Journal.

******************************************************************

# IN RE RILEY B.*
## (AC 43959)

Alvord, Moll and DiPentima, Js.

*Syllabus*

The respondent mother appealed to this court from the judgment of the trial court terminating her parental rights as to her minor child. After the petitioner, the Commissioner of Children and Families, filed the petition to terminate the mother's parental rights, the mother filed a motion to transfer guardianship to a maternal relative in New Jersey. The motion was consolidated for trial with the termination of parental rights petition. The court terminated the mother's parental rights and denied her motion to transfer guardianship. On appeal, the mother claimed that the court deprived her of her right to substantive due process because there was no compelling reason to sever her liberty interest in the integrity of her family while the parties waited to learn whether guardianship of the child could be transferred, which was a less restrictive alternative to the termination of her parental rights. *Held* that this court declined to review the respondent mother's unpreserved constitutional claim because it failed to satisfy the first prong of *State* v. *Golding* (213 Conn. 233), as the record was devoid of any evidence that the maternal relative was amenable to guardianship, the primary factual predicate to the respondent's claim.

Argued November 10, 2020—officially released March 31, 2021**

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of New Haven, Juvenile Matters, where the respondent mother filed a motion to transfer guardianship; thereafter, the matter was tried to the court, *Marcus, J.*; judgment denying the motion to transfer guardianship and terminating the respondents' parental rights, from which the respondent mother appealed to this court. *Affirmed.*

*Albert J. Oneto IV,* assigned counsel, for the appellant (respondent mother).

*Elizabeth Bannon,* assistant attorney general, with whom, on the brief, were *William Tong,* attorney general, and *Stephen G. Vitelli,* assistant attorney general, for the appellee (petitioner).

*Opinion*

PER CURIAM. The respondent mother, Jacquanita B., appeals from the judgment of the trial court rendered in favor of the petitioner, the Commissioner of Children and Families, terminating her parental rights with respect to her minor daughter, Riley B. On appeal, the respondent[1] argues that the court deprived her of substantive due process as guaranteed by the fourteenth amendment to the United States constitution because there was no compelling reason, as required under the strict scrutiny standard, to sever the respondent's liberty interest in the integrity of her family while the parties waited to learn whether guardianship of the child could be transferred to a maternal relative in New Jersey. We conclude that the record is inadequate to review the respondent's unpreserved constitutional claim. Accordingly, we affirm the judgment of the trial court.

The following facts, as found by the trial court or as undisputed in the record, and procedural history are relevant to our resolution of this appeal. The respondent is the mother of Riley, who was born in 2016, and two older daughters, Nyasia and Corrynn. The Department of Children and Families (department) has been involved with the respondent and her family since 2009, as a result of issues of physical neglect, physical abuse, and emotional neglect. On March 29, 2018, the department received a referral from Corrynn's school after Corrynn visited the school nurse with a blood blister on her finger, as well as extensive bruising and red welts on both of her inner forearms. Corrynn stated that the respondent had hit her with a belt that morning because she had forgotten to do her homework and that she was afraid to go home for fear of being hit again. The respondent denied the allegations, did not show concern for Corrynn, and was arrested for risk of injury to a child and assault in the second degree.

On April 4, 2018, the department held a considered removal meeting, which resulted in a safety plan that allowed the children to stay with a maternal great-aunt until the Intensive Family Preservation (IFP) program could begin working with the respondent and the children at home. On April 6, 2018, the children were allowed to return to the respondent's care on the condition that she agree to work with the department and IFP and continue counseling for Corrynn. The respondent refused to engage with the department, but she worked with IFP in the home. A department social worker attempted to visit the home to assess the safety of the children on numerous occasions but was unsuccessful in gaining access to the home. The social worker additionally attempted to join the respondent in an IFP session but was unsuccessful. From May to June, 2018, the social worker was able to speak to the respondent on only one occasion, on the telephone.

Between May and June, 2018, the respondent was informed that neglect petitions would be filed, the department would be requesting protective supervision of the children, and she would have to comply with court-ordered specific steps to facilitate reunification. The steps included, but were not limited to, keeping all appointments set by or with the department, cooperating with the department's home visits, and taking part in individual counseling. The respondent failed to adhere to the required steps and, as a result, the petitioner filed neglect petitions on behalf of Corrynn and Riley on June 7, 2018. While the neglect petitions were pending, the department received a referral on June 19, 2018, wherein it was reported by multiple individuals that the respondent was physically and verbally abusing Corrynn on a regular basis. The department immediately commenced an investigation.

A department investigator and social worker attempted an unannounced visit to the home on June 20, 2018, with a New Haven police officer, but they were unsuccessful in gaining access to the home or seeing the children. However, the investigator and social worker were able to meet with the police officer, who informed them of an incident involving an assault by the respondent on a neighbor, which also had occurred on June 19, 2018, for which a warrant would be sought for the charge of assault in the second degree.

Also on June 20, 2018, a department supervisor was able to make telephone contact with the respondent. The respondent was extremely agitated and defensive and refused to meet with the department supervisor. The department supervisor then made another visit to the home, but nobody was present. The department notified the New Haven police, who agreed to assist in searching for the respondent's car. The department investigator and social worker attempted to visit the home on June 21, 2018, but were unsuccessful in gaining entry, even though it was apparent, on the basis of the loud music heard inside, that people were present.

That same day, the department investigator received a telephone call from the respondent's criminal defense attorney, during which she impressed upon the attorney the urgency for the respondent to contact her and for her to assess the safety of the children. The respondent contacted the social worker and, after initially refusing to meet, agreed to schedule a meeting for the next day, June 22, 2018, with the children only. In a text message sent later that day, however, the respondent refused to make the children available the following day. Nevertheless, on June 22, 2018, the respondent made the children available at the maternal great-aunt's home. The department social worker conducted a short meeting with the children; the respondent was not present. Almost daily communication between the respondent and the department followed the June 22, 2018 meeting

with the children in an attempt to schedule a home visit, but the respondent refused to cooperate.

A home visit was eventually scheduled for July 11, 2018, at 2 p.m. That morning, the respondent sent a text message to the department investigator, asking her to arrive at 3 p.m. instead. When the investigator arrived at the home at 3 p.m., no one answered the door. The investigator waited until 3:30 p.m., but the respondent never appeared.

On July 12, 2018, the department received a telephone call from the New Haven Police Department informing it that the respondent had been taken into custody after being arrested for assault in the second degree and disorderly conduct regarding the June 19, 2018 assault by the respondent on her neighbor and that the children were in need of a caretaker. The respondent identified some family resources, but they were either not available or deemed not appropriate. The department then invoked a ninety-six hour administrative hold on behalf of both Corrynn and Riley. As a result of the foregoing, the petitioner applied for ex parte orders of temporary custody on behalf of Corrynn and Riley, which were granted on July 16, 2018. The children were placed in a nonrelative foster home, where they remained as of January, 2020.

The respondent appeared at her plea date on the neglect petitions on July 10, 2018, was advised of her rights, was appointed counsel, and entered pro forma denials. She additionally appeared at the preliminary hearing for the orders of temporary custody, choosing to contest them, and a hearing was scheduled for July 27, 2018. The respondent left the hearing early on July 27, 2018, without permission of the court, during the testimony of the department social worker. The hearing did not conclude until August 2, 2018, at which time the court sustained the orders of temporary custody. The respondent failed to appear on August 2, 2018, as well. In addition, the department established a visitation schedule for the respondent, Riley, and Corrynn between August and December, 2018. The respondent's compliance with the visitation schedule was sporadic.

The respondent failed to appear at the case status conference on September 18, 2018. The same day, Riley was adjudicated neglected and was committed to the custody of the petitioner, subject to review in April, 2019. Final specific steps were ordered for the respondent as well. A permanency plan of termination of parental rights and adoption was approved by the court on June 5, 2019, with respect to Riley.

On June 11, 2019, a maternal relative,[2] who is a resident of New Jersey, contacted the department, offering to be an adoptive resource for Riley. In June, 2019, the petitioner attempted to submit a request for action, pursuant to the Interstate Compact on the Placement

of Children (ICPC), to the state of New Jersey; see General Statutes § 17a-175; but, as a result of a delay in obtaining Riley's social security card, the ICPC package was not submitted until one week before December 5, 2019, the date of the trial conducted in the present case. The ICPC results were pending at the time of trial.

On August 1, 2019, the petitioner filed a petition to terminate the respondent's parental rights as to Riley, alleging, as the sole ground for termination, that the respondent had failed to achieve a sufficient degree of personal rehabilitation under General Statutes § 17a-112 (j) (3) (B) (i).[3] Following a judicial pretrial on October 1, 2019, the respondent filed a motion to transfer guardianship to the maternal relative in New Jersey. The motion was consolidated for trial with the termination of parental rights petition.

A trial on the petition was held on December 5, 2019. The respondent appeared at trial by writ of habeas corpus, as she was serving a two year term of incarceration that had commenced on October 28, 2019. Prior to the evidentiary portion of trial, the petitioner urged the denial of the respondent's motion to transfer guardianship because the ICPC process had not yet been completed. In response, the respondent orally requested that the court stay the proceedings until the ICPC process was completed. The court reserved its decision on the respondent's request for stay until after the conclusion of trial. Thereafter, several witnesses, including the respondent, testified.

On January 14, 2020, the court, *Marcus, J.*, issued a memorandum of decision rendering judgment terminating the respondent's parental rights as to Riley and appointing the petitioner as Riley's statutory parent. In support of its judgment, the court determined, inter alia, that (1) the department had made reasonable efforts to locate the respondent and the respondent was unable or unwilling to benefit from reunification services offered by the department, (2) the petitioner had demonstrated, by clear and convincing evidence, that the respondent had failed to sufficiently rehabilitate under § 17a-112 (j) (3) (B) (i), and (3) terminating the respondent's parental rights was in Riley's best interest. Additionally, the court denied the respondent's motion to transfer guardianship and request to stay the proceedings. The court observed that the ICPC process was not yet completed and correctly stated that, as a matter of law, it could not "transfer guardianship of a child to an out-of-state relative without the completion of an ICPC," citing *In re Yarisha F.*, 121 Conn. App. 150, 164–65, 994 A.2d 296 (2010). This appeal followed.[4] Additional facts and procedural history will be set forth as necessary.

Before turning to the respondent's claim, we briefly review a trial court's statutory obligations when considering a petition for the termination of parental rights.

"Pursuant to § 17a-112 (j), the trial court must make certain required findings after a hearing before it may terminate a party's parental rights. It is well established that, [u]nder § 17a-112, a hearing on a petition to terminate parental rights consists of two phases: the adjudicatory phase and the dispositional phase. During the adjudicatory phase, the trial court must determine whether one or more of the . . . grounds for termination of parental rights set forth in § 17a-112 [(j) (3) exist] by clear and convincing evidence. . . . In contrast to custody proceedings, in which the best interests of the child are always the paramount consideration and in fact usually dictate the outcome, in termination proceedings, the statutory criteria must be met before termination can be accomplished and adoption proceedings begun. . . . Section [17a-112 (j) (3)] carefully sets out . . . [the] situations that, in the judgment of the legislature, constitute countervailing interests sufficiently powerful to justify the termination of parental rights in the absence of consent. . . . If the trial court determines that a statutory ground for termination exists, then it proceeds to the dispositional phase. During the dispositional phase, the trial court must determine whether termination is in the best interests of the child. . . . Also, as part of the adjudicatory phase, the department is required to prove, by clear and convincing evidence, that it has made reasonable efforts . . . to reunify the child with the parent, unless the court finds . . . that the parent is unable or unwilling to benefit from reunification . . . . Because a respondent's fundamental right to parent his or her child is at stake, [t]he statutory criteria must be strictly complied with before termination can be accomplished and adoption proceedings begun." (Citations omitted; internal quotation marks omitted.) *In re Elijah C.*, 326 Conn. 480, 499–500, 165 A.3d 1149 (2017).

In the present appeal, the respondent does not challenge the court's adjudicatory findings. Instead, the respondent claims that the judgment terminating her parental rights violated her right to substantive due process as guaranteed by the fourteenth amendment to the United States constitution because the petitioner was without a compelling reason to sever her liberty interest in the integrity of her family. Specifically, the respondent argues that a transfer of guardianship to Riley's maternal relative in New Jersey would have served as a less restrictive means to achieve the state's dual goals of protecting Riley from harm and affording her permanency. The respondent acknowledges that her claim of constitutional error was not preserved. Accordingly, she seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). The petitioner responds that, among other things, the record is inadequate for review, and, therefore, the respondent's claim fails under the first prong

of *Golding*. We agree with the petitioner.

"Under *Golding*, a [party] can prevail on a claim of constitutional error not preserved at trial only if the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [party] of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the [party's] claim will fail. The appellate tribunal is free, therefore, to respond to the [party's] claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *In re Adelina A.*, 169 Conn. App. 111, 119, 148 A.3d 621, cert. denied, 323 Conn. 949, 169 A.3d 792 (2016).

Our Supreme Court repeatedly has emphasized that "*Golding* is a *narrow exception* to the general rule that an appellate court will not entertain a claim that has not been raised in the trial court. The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party. . . . Nevertheless, because constitutional claims implicate fundamental rights, it also would be unfair automatically and categorically to bar a defendant from raising a meritorious constitutional claim that warrants a new trial solely because the defendant failed to identify the violation at trial. *Golding* strikes an appropriate balance between these competing interests: the [respondent] may raise such a constitutional claim on appeal, and the appellate tribunal will review it, but only if the trial court record is adequate for appellate review. The reason for this requirement demands no great elaboration: in the absence of a sufficient record, there is no way to know whether a violation of constitutional magnitude in fact has occurred. Thus, as we stated in *Golding*, we will not address an unpreserved constitutional claim [i]f the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Canales*, 281 Conn. 572, 580–81, 916 A.2d 767 (2007).

"In assessing whether the first prong of *Golding* has been satisfied, it is well recognized that [t]he [respondent] bears the responsibility for providing a record that is adequate for review of [her] claim of constitutional error. If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt

to supplement or reconstruct the record, or to make factual determinations, in order to decide the [respondent's] claim. . . . The reason for this requirement demands no great elaboration: in the absence of a sufficient record, there is no way to know whether a violation of constitutional magnitude in fact has occurred." (Citations omitted; internal quotation marks omitted.) *In re Anthony L.*, 194 Conn. App. 111, 114–15, 219 A.3d 979 (2019), cert. denied, 334 Conn. 914, 221 A.3d 447 (2020).

"To determine whether the record is adequate to ascertain whether a constitutional violation occurred, we must consider the respondent's alleged claim of impropriety and whether it requires any factual predicates." *In re Azareon Y.*, 309 Conn. 626, 636, 72 A.3d 1074 (2013).

As stated previously in this opinion, the crux of the respondent's claim is that her substantive due process rights were violated because there was a less restrictive alternative to the termination of her parental rights in the form of a transfer of Riley's guardianship to the respondent's relative in New Jersey. The primary factual predicate to that claim required an evidentiary showing that Riley's maternal relative was in fact amenable to guardianship of Riley. It is undisputed, however, that the record is devoid of any evidence that the maternal relative was amenable to guardianship.[5] In the absence of this basic factual predicate, there is an insufficient record to permit us to review the respondent's substantive due process claim. See *In re Brayden E.-H.*, 309 Conn. 642, 656–57, 72 A.3d 1083 (2013) (reserving for another day questions of whether substantive due process requires determination that termination is least restrictive means to protect child's best interest and, if so, whether § 17a-112 violates that requirement). "Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by the trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the respondent's claim] would be entirely speculative." (Internal quotation marks omitted.) *In re Anthony L.*, supra, 194 Conn. App. 119–20.

Accordingly, we decline to review the respondent's unpreserved constitutional claim because it fails to satisfy the first prong of *Golding*. See, e.g., *In re Azareon Y.*, supra, 309 Conn. 636–41 (affirming this court's determination that respondent's unpreserved substantive due process claim was not reviewable in light of inadequate record on issue of valid alternative permanency plan); *In re Madison C.*, 201 Conn. App. 184, 189–96, 241 A.3d 756 (concluding that respondent's substantive due process claim was unreviewable because record contained no factual predicates to permit review of claim that lesser restrictive means, other than termina-

tion of her parental rights, were available to protect best interests of children), cert. denied, 335 Conn. 985, 242 A.3d 480 (2020); *In re Adelina A.*, supra, 169 Conn. App. 114, 125–27 (concluding that respondent's claim was unreviewable because there was no evidence presented concerning alternative permanency plan).

The judgment is affirmed.

\* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

\*\* March 31, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The trial court also rendered judgment terminating the parental rights of Riley's father, Kevin M. Kevin M. has not appealed from the judgment terminating his parental rights, and, therefore, we refer in this opinion to Jacquanita B. as the respondent.

[2] We note that the record contains inconsistent references to this individual as a maternal cousin or a maternal aunt. The discrepancy has no impact on our analysis.

[3] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts, except that such finding is not required if the court has determined at a hearing pursuant to section 17a-111b, or determines at trial on the petition, that such efforts are not required, (2) termination is in the best interest of the child, and (3) . . . (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected, abused or uncared for in a prior proceeding, or (ii) is found to be neglected, abused or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[4] The attorney for Riley has adopted the petitioner's brief.

[5] Indeed, during oral argument before this court, when asked on what evidence he relied for the proposition that a maternal relative was interested in guardianship of the child, the respondent's counsel answered: "There was no evidence."